STATE *EX REL.* GIBBES v. MORRISON.

1. TAX SALES—PURCHASER—POSSESSION.—The sheriff having advertised and sold for unpaid taxes a tract of land by proper metes and bounds, but describing it as located in the wrong parish, and containing 400 acres, when the real quantity was 480, and having made and delivered deed to the purchaser, is not relieved of the duty of putting the purchaser into possession, under the plain mandate of the statute law, by reason of these errors of location and quantity, it being admitted that it was the same land, nor by the fact that he subsequently advertised the same land for resale, correcting the former misdescription, the resale not having been made because then claimed by a third person. Any person so desiring, could have prevented a sale of this land for the alleged unpaid taxes by complying with the provisions of section 3 of the act of 1887 (19 Stat., 862,) and amendatory acts; but not having done so, and the sheriff having sold and made deed, it was his duty to put the purchaser into possession.

2. SUPREME COURT—ISSUES OF FACT REFERRED.—This court, wanting further information as to the facts, remanded the case to the Circuit Court for the ascertainment of two issues of fact. These issues were referred by order of the Circuit Court to a referee, and his findings were confirmed by that court and certified to this court, and thus became a part of the appeal record.

3. ABANDONED LANDS—TAX SALES—PURCHASER—POSSESSION.—Under the act of 1889 (20 Stat., 347), lands not upon the tax books and the ownership unknown, were properly placed upon the tax duplicate in the name of "unknown," charged with the prescribed past years' taxes and penalties, and levied and sold. The sheriff having made deed to the purchaser, should have put him into possession, and disregarded the claim of a third person, who returned this land for taxation in his own name after such levy and sale by the sheriff.

4. TAX SALE—PURCHASER—LIMITATION OF ACTION—MANDAMUS.—The purchaser holding such tax title, is entitled to a writ of mandamus, to require the sheriff to put him into possession, and this relief should not be denied him, because the lapse of time would now prevent the former owner from bringing action to recover the possession, inasmuch as (1) the purchaser

proceeded at once by rule on the sheriff, and the rule was discharged without prejudice to his right to institute the proper proceeding; (2) the limitation of time does not begin to run in favor of the purchaser until he has received deed and been put into possession; and (3) the purchaser has filed with the record his waiver of the bar, if action for recovery of possession be hereafter commenced by such claimant within a reasonable time.

5. MANDAMUS—JUDGMENT NISI.—Judgment reversed and writ of mandamus directed to issue, provided the relator will waive the benefit of the statutory limit of two years to any action against him that may be instituted within a time to be prescribed by the Circuit Court.

Before NORTON, J., Berkeley, October, 1894.

This was a proceeding for mandamus in the name of the State on the relation of James G. Gibbes (who was purchaser at a tax sale) against J. B. Morrison, as sheriff of Berkeley County, commenced January 31, 1893. To an alternative writ the respondent made return, and the Circuit Judge refused the writ and dismissed the proceeding. This judgment, omitting the facts set forth in the opinion of this court, was as follows:

"Respondent is estopped by his deed from denying that he levied on the land described and conveyed therein, but such estoppel does not establish that the tract claimed by Winningham is the one so levied on. That is an issue of fact, which it would be proper to submit to a referee or to a jury if the rights of relator and respondent alone were involved. It appears in the pleadings that the rights of one Winningham are also involved; that he is in possession of and claims title to the tract of land claimed by relator under his sheriff's tax title. If the peremptory writ should issue, and he be ejected thereunder, he would be barred by the limitation fixed in the act from instituting any action to recover the land, more than two years having now elapsed since the sale was made under which relator claims. Winningham's title may be good or it may be bad. I do not pass on that. But he has not been made a party to any suit, and appears to have had no notice of the tax sale under which relator claims before it was made, unless he saw the advertisement, which was so defective in description that relator was himself at first led to believe that the land held by Winningham was not identified by it. If relator had promptly

sought this remedy, and diligently pursued it, he might have obtained possession under it: but, as he has delayed until Winningham will be deprived of the right to try titles as contemplated by the act under which he claims, it is ordered, that the peremptory writ be refused, and the proceeding herein dismissed."

*Messrs. McCrady & Bacot,* for appellant.

*Mr. E. J. Dennis,* contra.

September 3, 1895. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. On the 10th of November, 1891, the respondent, as sheriff, having levied upon a certain tract of land in the county of Berkeley for unpaid taxes assessed thereon for the year 1889, sold the same to the relator, who, having complied with the terms of sale, received a deed, a copy of which is set out in the "Case." Relator then applied to the respondent to put him in possession of the said land, who refused to do so, and thereupon this proceeding for a mandamus was commenced to compel the respondent to put him in possession of the land, and the same was heard by his honor, Judge Norton, who rendered the decree set forth in the "Case," refusing the application for mandamus and dismissing the petition. From this judgment relator appeals upon the several grounds set out in the record.

The respondent, in his return, bases his refusal to put the relator, who was the purchaser at the tax sale, in possession, as he is expressly required to do by the act of 1887 (19 Stat., 862,) and the amendments thereto, upon the ground that, inasmuch as the land levied on for the unpaid taxes was described as lying in St. James Goose Creek Parish, instead of St. John's Berkeley Parish, and that it was described as containing 400 acres instead of 480 acres, which was claimed to be the area of the tract of which relator claimed possession, he doubted his right to comply with the demand of relator. But the land was also described by metes and bounds, and there certainly could not have been much doubt of its identity; for, as appears from the record of a former proceeding

in this very matter, referred to by Judge Norton and set out in the "Case," the respondent admitted that it was the same land; and such admission is formally repeated on the record in the present case. The further fact stated in respondent's return, that, owing to the irregularities in the description of the land, he readvertised the land as lying in St. John's Berkeley Parish, and when it was offered for sale under such readvertisement, counsel for one Winningham appeared "and exhibited plat concerning the said described land in St. John's Berkeley Parish, and offered to pay any claim that the State might have against the said land," cannot affect the question. It was the plain statutory duty of the respondent to put the relator in possession of the land which he had previously sold and conveyed to the relator, by the terms of which conveyance he was estopped from denying that he had made a levy upon the land, and which the statute expressly declared should "be held and taken as *prima facie* evidence of a good title in the holder, and that all proceedings have been regular, and all requirements of the law have been duly and fully complied with."

If, when the land was first exposed for sale, Winningham or any one else had complied with the provisions of section 3 of the act of 1887, as amended by the act of 1888 (20 Stat., 51), his rights could have been protected (if he had any) and the sale prevented. But after the sale was made and the land conveyed to the relator, it was the sheriff's duty to put the purchaser in possession; and it was neither his right nor duty to inquire into any supposed irregularities in the proceedings previous to the sale, or any supposed defects in the description of the premises, which seem to have been more apparent than real; for certainly neither the fact that the land was mentioned as situate in St. James Goose Creek Parish, when in fact it lay in St. John's Berkeley Parish, nor the fact that there may have been an error in the number of acres, could invalidate the sale or the relator's rights thereunder. See *Henderson* v. *Jones*, 2 Brev., 402, as to the error in the name of the parish. And surely no authority is needed to show that a mistake (if, indeed, there was one) as to the number of acres was of no consequence?

It will be observed that, in the return of respondent, it was not stated that Winningham had or even claimed title to the land in question, but simply that his counsel exhibited a plat covering the land, and offered to pay any claim that the State might have against the said land. This court, therefore, on the previous hearing of this appeal, deeming it necessary that it should have further information as to the facts, especially as to the possession of the land, remanded the case to the Circuit Court for the purpose of determining two issues of fact: 1st. Whether any one, and if so who, was in possession of the land in question at the time the same was first levied on by the sheriff? 2d. Whether any one, and if so who, was in possession of the said land at the time the same was sold and bid off by the relator? Accordingly these issues were, by a consent order, referred to a referee for determination, and his report having been confirmed by the Circuit Court and duly certified to this court, is now before us as a part of the record in the case. By that report it appears that the referee found "that one James R. Winningham has been in possession of the land in question from some time in 1890 up to the present time, within which period the said land was first levied on by the sheriff, and was sold and bid off by the relator." But the referee goes on to find, from the testimony, the nature and character of such possession, as follows: "About 1890 the said Winningham applied to J. C. Beaty, a civil engineer and surveyor of more than forty years experience, to survey and make a plat of the land for him (Winningham), which he (Beaty) did in 1890. At the time of this survey no one was in possession of the land. For ten years or more preceding it had been neither on the tax duplicate nor on the forfeited land list. It was vacant and abandoned land. It appeared for the first time on the tax duplicates of the fiscal year 1893, in the name of J. R. Winningham. The said Winningham had no titles for the land, and there were no plats or other papers showing the ownership of it, etc., so that Beaty had some difficulty in surveying it, and approximately estimated its contents at 480 acres. He (Winningham) desired Beaty to survey and make a plat of it for him, so that he could claim it and get

it on the tax book in his name, and some time after the said survey and plat were so made by Beaty, in 1890, he (Winningham) took possession of it and afterwards returned it for taxation in his own name for the fiscal year 1893. In 1891 the said Beaty made another survey and plat of this land for the State, it having been previously reported to the Secretary of State as 'abandoned land,' and, under this last survey and plat, it was conveyed to relator by the sheriff of Berkeley County by his deed dated the 10th day of November, 1891. On this last survey Beaty found that it contained 400 acres instead of 480 acres.''

This last survey was doubtless made under the authority of an act entitled ''An act in relation to abandoned lands not upon the tax duplicate or forfeited land list,'' passed in 1889 (20 Stat., 347), which authorized the commissioners of the sinking fund ''to have surveyed any lands that they are informed and believe have been continuously for ten or more preceding years upon neither the tax duplicate or forfeited land list of this State; and if, after such survey, the said absence from tax books be found to exist, to cause the said land to be placed upon the tax duplicate in the owner's name, if known, or in the name of Unknown, if the owner's name be not known, charged and taxed with the entire costs of the survey and investigation, and fifty per cent. penalty additional thereto, and with the taxes for five years immediately preceding, and collecting the same under existing law for collection of taxes.'' And under that law the sheriff levied upon and sold the land in question to the relator, for in his deed he recites, amongst other things: ''And whereas there appears on the tax duplicate of Berkeley County for the year 1889 certain real estate, consisting of * * * 400 acres, assessed in the name of Unknown, and valued at $156, the taxes, penalties, and assessments thereon amounting to $10.99; and whereas the above named Unknown having neglected to pay the county treasurer of Berkeley County the above taxes, assessments, and penalties as prescribed by law, an execution was issued therefor, as directed by said act, on the 20th day of February, 1891, and lodged with the sheriff of Berkeley County,'' going on to re-

cite the levy and sale of the land under said execution to the relator, and his compliance with the terms of sale, and proceeds to convey the said land to the relator.

From the foregoing facts as they are now made to appear before us, we can have no doubt that it was the statutory duty of the sheriff, the respondent in the case, to put the relator in possession of the land, notwithstanding the fact that the said J. R. Winningham has intruded himself into possession of the land in 1890, upon which the taxes for 1889 had never been paid, and which had not been even returned for taxation until the year 1893, long after the levy and sale under which relator claims possession.

It seems from the decree of Judge Norton (which should be set out in the report of this case), that he bases his conclusion refusing the writ of mandamus largely, if not entirely, upon the ground that the relator, by his laches or delay in asserting his rights, has allowed the two years to elapse within which the owner of the land, possession of which has been acquired under a tax sale, is permitted to bring his action to recover possession of the same; and that if the relator is now put in possession of the land, Winningham, if he has any lawful claim, will be barred of his action to assert the same by the lapse of the two years. In the first place, we do not think that there was any laches on the part of the relator, for it appears, from the record before us, that the relator promptly proceeded to require the sheriff to put him in possession, by resorting to an ordinary rule on the sheriff, which was denied *solely* upon the ground that an ordinary rule on the sheriff was not the appropriate remedy, and the rule was discharged, expressly *without prejudice* to his right to resort to the appropriate remedy. *Gibbes* v. *Morrison*, 39 S. C., 369. Now as the judgment in that case was rendered on the 26th of June, 1893, more than two years after the sale, by which the relator was not only not forbidden, but in terms invited to institute the appropriate proceeding, it is very obvious that this court could not then have thought that the relator was shut off from instituting the present proceeding. In the second place, it seems to us far from clear that, under a proper construction of that clause of

the statute fixing the two years limit, the time begins to run from the day that the sale is made; for it may well be argued that the true construction of that clause is that the two years commences to run from the time when the sale is *consummated* by the conveyance to the purchaser and by putting him in possession; for otherwise, by collusion between the sheriff and the purchaser, such delay might occur as would effectually exclude the claimant from asserting his claim, if it should be held that the two years commenced to run from the day of sale, without regard to the time when the same was consummated by conveyance and possession. Indeed, it is somewhat difficult to understand how any action could be commenced against a purchaser at a tax sale of land for the recovery of the possession of the said land, unless the purchaser was in possession. But in the third place, in view of the express stipulation of the relator, filed with the record in this case, that he will waive the bar afforded by the two years limitation, and consent that an action for the recovery of the land or for the recovery of the possession thereof, may be commenced by the said Winningham within such time as may be just and reasonable, the point upon which the judgment of the Circuit Court seems mainly to rest, loses its importance. It seems to us that there was error on the part of the Circuit Judge in dismissing the application for mandamus.

The judgment of this court is, that the judgment appealed from be reversed, and that the case be remanded to the Circuit Court for Berkeley County, with instructions to issue the writ of mandamus as prayed for, provided the relator will file with the clerk of the Court of Common Pleas for said county his consent in writing to waive all benefit of the two years limitation provided for in the act of 1887, and its amendments, in case any action shall be commenced against him by the said J. R. Winningham, within the time to be prescribed by the Circuit Court.